IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


KEYANA SCRUGGS                          :        CIVIL ACTION
                                        :
        v.                              :
                                        :
THE WHITING-TURNER CONTRACTING          :
COMPANY, et al.                         :        17-CV-3202


## MEMORANDUM AND ORDER

Ditter, J.                                              August 10, 2018

This case involves the sexual assault of the plaintiff, Keyana Scruggs, while she

was working as a contract employee for the Whiting-Turner Contracting Company at its

Navy Yard project.  Whiting-Turner has filed a motion to dismiss all claims raised in the

second amended complaint pursuant to Fed. Rule of Civil Procedure 12(b)(6).  For the

reasons that follow, the motion will be granted.

1. Factual Background

Scruggs was employed as a security guard by New Age Protection, Inc.  New Age

was contracted by Whiting-Turner to provide security for a project it was working on at

the Navy Yard in Philadelphia, Pennsylvania.  Scruggs was stationed at an enclosed

security booth with one doorway.  Inside was a table and chair, but no telephone, panic

button, or monitoring system.  One person was assigned to the booth throughout the work

day and another person overnight.  It was Scrugg's responsibility to verify credentials of

Whiting-Turner employees and subcontractors as they entered the Navy Yard. Defendant William Taylor was employed by Whiting-Turner as a senior superintendent at the Navy Yard project.

On February 4, 2016, at approximately 1:30 p.m., Taylor entered the security booth while Scruggs was working and they engaged in conversation. As part of his daily routine, Taylor would converse with Scruggs about the ongoing project for about an hour. About 2:20 p.m. on this day, Taylor squatted on the floor of the booth to avoid seeing another Whiting-Turner employee. Taylor then placed his hands on Scruggs' thighs and began rubbing her thighs, buttocks and back. Taylor asked her if she liked certain sexual acts, if she had ever had sex with a white man, and told her he had never been with a black woman. Taylor told her sexual activity was going on at all the Whiting-Turner work sites, including the Navy Yard. Scruggs had no knowledge of such activity.

Scruggs did not consent to Taylor's touching her and became frightened and fearful. She told Taylor to stop and pushed him away but his sexual advances continued. At some point during the encounter, Scruggs activated her cell phone camera and, without his knowledge, recorded Taylor's conduct which continued for about 40 minutes. Scruggs then told Taylor her shift was over and she left.

Scruggs immediately reported the incident to New Age and the federal authorities at the Navy Yard. Taylor was arrested and charged with assault and battery. Whiting-Turner fired Taylor on February 18, 2016, six days after learning of the assault. He was

found guilty of two counts of assault on September 8, 2016. Taylor was placed on probation for two years and required to pay restitution, fines, and court costs.

In her second amended complaint, Scruggs raises claims of negligence (Count III), gross negligence (Count IV), negligent infliction of emotional distress (Count V), Negligent Supervision (Count VII), and negligent hiring and retention (Count VIII) against Whiting-Turner. The other counts in the complaint are against Taylor.

2. Standard of review

When considering a motion to dismiss for failure to state a claim, I must accept all the plaintiff's well-pled facts as true, but I may disregard any legal conclusions. I then determine whether those facts are sufficient to show the plaintiff has a plausible claim for relief. The complaint must do more than permit me to infer the mere possibility of misconduct, it "must allege facts sufficient to 'nudge her claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

3. Discussion

A. Negligence

Whiting-Turner moves to dismiss each of Scruggs' claims that rely on its vicarious liability for Taylor's criminal actions against Scruggs. Under Pennsylvania law, an employer may only be held responsible for the acts of its employee that cause injury to a third party under the doctrine of *respondeat superior* if the acts were committed during

the course of and within the scope of employment.

It is generally held that the intentional sexual harassment of another is not within the scope of an employee's job responsibilities. *See Doe v. Pa. State Univ.,* 982 F. Supp. 2d 437, 443 (E.D. Pa. 2013). Conduct is considered within the scope of employment if "(1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer." *Id.* at 441 (E.D. Pa. 2013) (quoting *Fitzgerald v. McCutcheon,* 410 A.2d 1270, 1271 (Pa. Super. 1979)).

Although whether an employee's act is within his/her scope of employment is typically a question for the jury, certain types of outrageous actions fall outside the scope of employment as a matter of law. For example, Pennsylvania courts have held that "[w]here . . . the employee commits an act encompassing the use of force so excessive and dangerous, as to be totally without responsibility or reason . . . , the employer is not liable as a matter of law." *Id.* at 441 (quoting *Lunn v. Yellow Cab Co.*, 169 A.2d 103, 104 (Pa. 1961)). The employer is not responsible for such acts, because "[i]f an assault is committed for personal reasons or in an outrageous manner, it is not actuated by an intent of performing the business of the employer and is not done within the scope of employment." *Fitzgerald*, 410 A.2d at 1272 (citing *Lunn*, 169 A.2d at 104-05). Thus, while certain acts of willful misconduct by an employee may occur in the course of

employment, they may still fall outside the scope of that employment.

Here, as in *Doe*, except for the fact that the events occurred at work, this assault was committed by Taylor for personal reasons and was not within the scope of his employment. Scruggs has failed to plead any facts that would support a finding that Taylor's "actions were of a kind and nature that he was employed to perform or that they were actuated by a purpose to serve the employer." *Doe,* 982 F. Supp. 2d, at 441.

There are also no facts asserted to suggest Whiting-Turner was on notice that Taylor might behave as he did. There is no allegation that he was ever disciplined for sexual misconduct, and Scruggs acknowledges that she did not know of any sexual conduct in the workplace by other employees until her conversation with Taylor on the day of the assault. There is no information that this conduct was non-consensual, who was involved, when it occurred, how Whiting-Turner was on notice of it, or what it had to do with Taylor's touching Scruggs. As no connection is made tying these broad assertions and Taylor's conduct or Whiting-Turner's prior knowledge, no finder of fact could reasonably conclude that Taylor's illegal activity could have been expected by Whiting-Turner. Thus, Count III will be dismissed.

B. Gross negligence

Scruggs also cites the doctrine of *respondeat superior* to support her claim of gross negligence on the part of Whiting-Turner. As discussed above, Scruggs assertions fail to state a claim for ordinary negligence and they clearly do not support a claim of gross

negligence.

Pennsylvania courts define gross negligence as "a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care." *Ohio Valley Energy Sys. Corp. v. DL Res., Inc.*, 2016 U.S. Dist. LEXIS 164854, *31 (quoting *Albright v. Abington Mem'l Hospital,* 696 A.2d 1159, 1164 (Pa. 1997)). The gross negligence determination is normally for the jury, "but may be removed from consideration by a jury and decided as a matter of law only where the case is entirely free from doubt and there is no possibility that a reasonable jury could find gross negligence." *Id*. *31-32 (quoting *Albright*, at 1165)).

Scruggs is attempting to impute Taylor's comments about other sexual activity to Whiting-Turner in order to support a claim that Whiting-Turner was aware of the sexual activity occurring on the worksite through Taylor. Again, she asserts no facts to support an inference that Whiting-Turner had any knowledge of such activity or basis to suspect that Taylor would engage in this criminal conduct. Without this factual basis, no factfinder could conclude that Whiting-Turner's conduct was outrageous or significantly departed from how a reasonable person would act under the circumstances.

Scruggs' allegations are insufficient to present a plausible claim that Whiting-Turner should be held vicariously liable for gross negligence. Without some indicia that Whiting-Turner had notice of Taylor's propensity to commit this act, or even that other

6

non-consensual or consensual sexual activity was occurring on the site, the fact-finder could not find flagrant or gross deviation from the ordinary standard of care. Count IV will be dismissed.

## C. Negligent Infliction of Emotional Distress (NIED)

Pennsylvania limits actions for NIED to four specific circumstances: 1) where the defendant has a contractual or fiduciary duty to the plaintiff; 2) where the plaintiff was subjected to a physical impact; 3) where the plaintiff was within a zone of danger, thereby reasonably experiencing a fear of imminent physical injury; or 4) where the plaintiff observed a tortious injury to a close relative. *Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 217 (Pa. Super. 2012). Scruggs does not indicate which theory she is pursuing, nor does she plead sufficient facts to support any theory. Most importantly, she is attempting to assert a claim in negligence for conduct that was intentional and for which I have already held, Whiting-Turner cannot be held vicariously liable.

I will dismiss the claims against Whiting-Turner asserted in Count V of the complaint.

## D. Negligent supervision/hiring or retention

To set forth a claim for negligent hiring, Scruggs must show that Whiting-Turner, knew or was on notice that Taylor had a propensity for misconduct but still hired him thereby exposing her to danger. *Brezenski v. World Trade Transfer, Inc.*, 755 A.2d 36, 39-40 (Pa. Super. 2000). A claim for negligent retention is similar – it requires a showing

that the Whiting-Turner failed to fire Taylor after learning of a dangerous propensity. *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 420 (Pa. 1968). A claim for negligent supervision requires Scruggs to show that Whiting-Turner knew or should have known of a need to supervise Taylor, and by failing to do so, exposed her to his sexual misconduct.

Under each theory of liability, Scruggs must show that Taylor committed bad acts that would have put a reasonable employer on notice of his propensity to injure others. *Id.,* at 422. This is where her initial complaint and each of its subsequent amendments fails. There is no allegation that Taylor had committed prior bad acts and that Whiting-Taylor knew or should have known of those acts. Thus, I will dismiss Counts VII and VIII.

4. Conclusion

For the reasons discussed above, I shall dismiss all claims against defendant, Whiting-Turner. I find further that no additional opportunity to amend the complaint would resolve the deficiencies that have resulted in its dismissal and I have therefore denied Scruggs most recent request to amend the complaint for a third time by separate order.

An appropriate order follows.